CULPEPPER, Judge.
This is a suit by Lake Charles Electric Company, Inc., an electrical subcontractor, against David B. Miller & Co., Inc., as the prime contractor, and Globe Indemnity Co., as surety, for the sum of $6,226.58, which is alleged to be the balance due for labor and materials furnished by plaintiff in the construction of a warehouse for the Sted-man Company as owner. David B. Miller & Co., Inc. did not file responsive pleadings, but a preliminary default was entered by plaintiff during the trial. Globe Indemnity Company answered alleging that plaintiff had been paid in full on the Stedman job. In a third party petition, Globe, in the alternative, asked for judgment over against Miller.
The trial court rendered judgment in favor of plaintiff and against Miller and Globe in solido for the sum of $6,226.58 together with interest, attorney’s fees and costs, but the trial court did not render judgment on Globe’s third party petition to which Miller did not respond. From ■ this judgment, Globe has appealed sus-pensively.
The facts show that the subcontract in question here was entered into between plaintiff and the Miller Company on April 26, 1956, for a total price of approximately $35,000. As the work progressed during the year 1956, Miller made three cash payments to plaintiff totaling $13,960.25, leaving a balance due in the sum of $21,460.21. In March and April of 1956, the plaintiff, Lake Charles Electric Company, Inc., issued to the-Miller Company two credit memorandums totaling $6,226.58. On receipt of these two credit memorandums from plaintiff, the bookkeeper for the Miller Company entered them on its accounts receivable ledger sheet applying them to the amount owed by Miller to plaintiff on the Stedman job thereby reflecting, as far as Miller’s books were concerned, that its indebtedness to plaintiff was reduced from $21,460.51 to $15,240.93.
*782 On completion of the Stedman job, Miller was not financially able to pay plaintiff and other subcontractors the balance due them and consequently Miller’s surety, Globe Indemnity Company was called on to assume Miller’s obligations on the Stedman job, including that due the plaintiff. When Globe’s accountants examined Miller’s books to determine the amounts of claims which they would have to pay, they of course concluded that Miller owed plaintiff the balance of only $15,240.93 which was the amount remaining after entry of the two above mentioned credit memorandums totaling $6,226.58 which had been received by Miller from plaintiff. However, plaintiff refused to accept the sum of $15,240.93 contending that the two credit memorandums had been erroneously applied to the Stedman job. Consequently, Globe paid plaintiff the admitted indebtedness of $15,-240.93 leaving the difference of $6,226.58 which is in dispute in this suit.
The. legal issue involved here is one of ■the imputation of payments and a determination thereof requires that we examine in detail the facts regarding the two credit memorandums in question. Apparently, the plaintiff and Miller had been doing business for some time before the Stedman job with the result that Miller owed plaintiff approximately $60,000. According to the testimony of Mr. Williams, office manager for Lake Charles Electric Company, Inc., they realized that Miller was in bad financial condition and that they would have difficulty in collecting the money which it owed them, so they conceived the idea of allowing Miller to subcontract approximately $12,000 worth of work from the plaintiff on a job at Carville, Louisiana, and then paying Miller with credit memorandums instead of cash. Both Mr. Williams and Mr. Miller, president of David B. Miller & Company, Inc., testified that it was their agreement and understanding that all of these credits received by Miller for the Carville job would apply against the old indebtedness of approximately $60,000 owed by Miller to plaintiff, and that it was through error on the part of Miller’s bookkeeper, who was new and inexperienced at the time, that $6,226.58 of the credit received by Miller from the Carville job, was applied to the amount owed by Miller to plaintiff on the Stedman job.
Globe’s attorney took the witness stand in an effort to impeach Miller and testified that during the time he, as an attorney for Globe, was examining the Miller Company’s books, Miller did not state that the two credit memorandums in question had been incorrectly applied to the Stedman job contrary to his agreement with plaintiff. Globe’s attorney also testified that Miller’s bookkeeper, Mr. Warner,'failed to mention anything about the two credit memorandums having been erroneously applied, but the evidence shows that Mr. Warner was not employed by Miller until after the two credit memorandums in question had been received by Miller and the entries made on their books.
Counsel for Globe has cited LSA-Civil Code, Article 2163 which provides that the debtor of several debts has a right to declare, when he makes a payment, what debt he means to discharge. Counsel argues that in this case Miller, the debtor, had the right to impute the credits to the Stedman job which it did. Although the trial court did not assign written reasons for judgment, it necessarily found the facts to be that although Miller’s bookkeeper applied these credits to the Stedman job, this was in error and was in contravention of Mr. Miller’s previous agreement with plaintiff that all credits received by Miller from the Carville job would apply against the old indebtedness of $60,000 owed by Miller to plaintiff. We therefore find that Miller did not declare, within the meaning of LSA-Civil Code, Article 2163, that it meant to discharge the debt on the Stedman job.
Counsel for Globe has also called to our attention the well established jurisprudence that where a general contractor owes a subcontractor or materialman two debts, one of which is on a bonded job, *783 neither the debtor nor the creditor, if he has knowledge of the source of the money, can impute payments of money received by the contractor from the bonded job to another debt owed by the contractor to the subcontractor or materialman because this would amount to fraud as against the surety on the bonded indebtedness. See Calatex Oil & Gas Co. v. Smith, 175 La. 678, 144 So. 243; R. P. Farnsworth & Co. v. Electrical Supply Co., 5 Cir., 112 F.2d 150, 130 A.L.R. 192, and Breece Lumber Co. v. Morris, 19 La.App. 875, 141 So. 787. However, it is readily apparent that these cases are not applicable here because the credits received by Miller did not come from the Stedman job on which Globe was surety but rather came from an entirely unrelated source, the Carville job, which had no connection whatever with the Stedman job on which Globe was surety. The plaintiff and Miller have not defrauded Globe as to any funds received by Miller from the Stedman job.
The issue presented by this case is solely one of fact, based largely on the credibility of witnesses. We find that the evidence amply supports the factual conclusion of the trial judge and cannot say that he was manifestly erroneous.
With regard to Globe’s third party petition against Miller for judgment in the same amount as any judgment rendered herein in favor of plaintiff and against Globe, we find that Globe is clearly entitled to the relief prayed for under the terms of the indemnity agreement as well as the provisions of LSA-Civil Code Article 3052 and the jurisprudence thereunder. The judgment of the lower court must therefore be amended in this respect.
For the reasons hereinabove set forth, the judgment of the lower court is amended by awarding judgment in favor of Globe Indemnity Company and against David B. Miller Company, Inc. for the same amount as the judgment rendered in favor of plaintiff and against defendants in solido. Otherwise than as herein amended, the judgment of the lower court is affirmed. All costs of this appeal are assessed against the defendants.-
Amended and affirmed.